GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
Email: ghamm@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Attorneys for Alleged Debtor, EB Holdings II, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>EB HOLDINGS II, INC., a Nevada corporation<br><br>Alleged Debtor. | Case No.: BK-S-17-12642-MKN<br>Chapter 11 (Involuntary)<br><br>Date: OST Pending<br>Time: OST Pending |

**MOTION TO STRIKE LIMITED STATEMENT OF LEG Q LLC IN SUPPORT OF INVOLUNTARY CHAPTER 11 PETITION UNDER SECTION 303 OF THE BANKRUPTCY CODE**

EB Holdings II, Inc. ("EB Holdings"), the alleged debtor in the above-captioned case, hereby submits its motion (the "Motion") to strike the *Limited Statement of LEG Q LLC in Support of Involuntary Petition Under Section 303 of the Bankruptcy Code* (the "Limited Statement") [ECF No. 106]. EB Holdings seeks to strike the Limited Statement because LEG Q LLC ("LEG Q") is neither a petitioning creditor nor a party in interest and lacks standing to be heard in connection with the Court's determination of the contested Involuntary Petition,[1] MSJ, and MTD (collectively, the "Involuntary Proceedings").

. . .

---

[1] All capitalized, undefined terms shall have the meanings ascribed to them in the Limited Statement.

The Motion is based upon the memorandum of points and authorities herein, the pleadings and papers on file with the Court, judicial notice of which are respectfully requested, and the argument of counsel at the time of hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
INTRODUCTION**

LEG Q is not and cannot be a petitioning creditor in these Involuntary Proceedings. LEG Q is not a creditor of EB Holdings; nor does it hold an equity interest in EB Holdings; nor is LEG Q an officer, director, or employee of EB Holdings. Instead, LEG Q owns 6.63% of non-debtor Eco-Bat Technology Ltd. ("Eco-Bat"), of which EB Holdings is the majority shareholder.[2] Despite lacking standing to file the Involuntary Petition, LEG Q nonetheless lodges a "Limited Statement" urging for the resolution of the motions pending before this Court.[3] However, LEG Q cannot circumvent standing requirements by styling its request for relief as a "Limited Statement." Because LEG Q has no standing to appear or be heard in these Involuntary Proceedings, its filing should be stricken.

Notably, the Limited Statement not only highlights LEG Q's own lack of standing—it underscores the impropriety of the Involuntary Petition. The allegations set forth in the Limited Statement are unsupported, and indeed are contradicted by assertions in other litigation LEG Q has commenced. But even if the allegations had merit, they would simply support the conclusion that there are derivative claims held against a non-debtor subsidiary's officers and directors that must be pursued in an English court.[4] These claims, to the extent even cognizable, in no way support the filing of an Involuntary Petition in Nevada against the parent company alleged debtor, EB Holdings. Indeed, LEG Q effectively admits that it seeks relief from this Court in order to obtain leverage against EB Holdings' principal,[5] a gross abuse of the bankruptcy system.

---

[2] See Limited Statement, ¶ 5.
[3] Id., ¶ 9.
[4] See id., ¶¶ 5-8.
[5] See id., ¶ 9.

## II.
## LEGAL ARGUMENT

**A.    Standing Is a Threshold Question for Which LEG Q Bears the Burden of Proof.**

Standing is a necessary element of federal-court jurisdiction and, therefore, a "threshold question in every federal case."[6]  As such, standing cannot be waived and must be examined whenever it is raised by a party or as a result of the court's independent obligation to examine its own jurisdiction.[7]  To have standing before this Court, LEG Q must establish[8] that it has: (1) met the statutory "party in interest" requirement under Section[9] 1109; (2) satisfied Article III constitutional requirements; and (3) met federal-court prudential standing requirements.[10]  "The limits on standing are vital in bankruptcy where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases."[11]

LEG Q has failed to carry its burden.  The Limited Statement is completely devoid of a single citation or legal basis upon which LEG Q contends that it has standing in the Involuntary Proceedings.  LEG Q is neither a petitioning creditor nor the alleged debtor.  It is not even a putative creditor of the alleged debtor.  Rather, it is simply a serial litigant possibly asserting derivative claims in a foreign forum against an operating company that is not within this Court's jurisdiction.  LEG Q does not and cannot have standing.  The Limited Statement should be stricken and LEG Q precluded from appearing with respect to the Involuntary Proceedings.

---

[6]    Warth v. Seldin, 422 U.S. 490, 498 (1975); see also Thomas v. Mundell, 572 F.3d 756, 760 (9th Cir. 2009) (citing City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency, 625 F.2d 231, 233 (9th Cir. 1980) (citing Constr. Indus. Ass'n of Sonoma County v. City of Petaluma, 522 F.2d 897, 903 (9th Cir. 1975))).

[7]    Hartman v. Summers, 120 F.3d 157, 160 (9th Cir. 1997) (citing United States v. Hays, 515 U.S. 737, 742 (1995)).

[8]    Lujan v. Defenders of Wildlife, et al., 504 U.S. 555, 561 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) and Warth, 422 U.S. at 508) (The party asserting federal court jurisdiction bears the burden of proof.)).

[9]    Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code and all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[10]    Hughes v. Tower Park Properties, LLC (In re Tower Park Properties, LLC),803 F.3d 450, 456 (9th Cir. 2015) (citing Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 884 (9th Cir. 2012)).

[11]    In re Deist Forest Products, Inc., 850 F.2d 340, 341-342 (7th Cir. 1988) (citing Kane v. Johns-Manville Corp., 843 F.2d 636, 641-646 (2d Cir. 1988)).

B.  **LEG Q Does Not Have Standing Under Section 303 to Seek an Order for Relief on the Involuntary Petition.**

LEG Q admits (albeit in a footnote) that it is not a petitioning creditor.[12] In fact, not only is LEG Q not a creditor, but LEG Q is not a shareholder, officer, director, or employee of EB Holdings, nor does it hold any other legally cognizable interest in EB Holdings. Instead, LEG Q is merely a minority shareholder of Eco-Bat, an entity in which EB Holdings is the majority shareholder.[13] As such, LEG Q could never be a petitioning creditor, because only a holder of a claim that is not contingent as to liability or subject to a bona fide dispute as to liability or amount may be a petitioning creditor under Section 303(b).[14]

Despite the fact that LEG Q is not and cannot be a petitioning creditor, LEG Q nonetheless asks this Court to "grant the Involuntary Petition and the MSJ and deny the MTD."[15] However, under Section 303(b), only petitioning creditors may seek such relief.[16] LEG Q, a minority shareholder of a non-debtor entity, therefore lacks standing under Section 303 to seek entry of an order for relief on the Involuntary Petition and denial of the Motion to Dismiss.

C.  **Section 1109 Does Not Confer Standing on LEG Q.**

Beyond the context of an involuntary petition, Section 1109 confers bankruptcy standing on parties in interest.[17] Although the term "party in interest" is not defined in the Bankruptcy Code, Section 1109 identifies the debtor, the trustee, a creditors' committee, an equity security

---

[12] Limited Statement, at fn. 1.

[13] See id., ¶ 5.

[14] See 11 U.S.C. § 303(b) (enumerating the requirements to qualify as a petitioning creditor in an involuntary proceeding). Similarly, while Section 303(c) permits creditors to join an involuntary petition after it is filed, because LEG Q is not a creditor of EB Holdings, LEG Q does not qualify to join the Involuntary Petition.

[15] Limited Statement, ¶ 10.

[16] See 11 U.S.C. § 303(b). Further, Bankruptcy Rule 1011(d) prohibits rogue pleadings like LEG Q's Limited Statement stating that other than the pleadings authorized under Federal Rule of Civil Procedure 12, "[n]o other pleadings shall be permitted, except that the court may order a reply to an answer and prescribe the time for filing and service."

[17] See 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, and equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and appear and be heard on any issue in a case under this Chapter.").

Garman Turner Gordon
650 White Dr., Suite 100
Las Vegas, Nevada 89119
(725) 777-3000

4

holders' committee, a creditor, an equity security holder, or any indenture trustee as parties qualifying as parties in interest. As a minority shareholder of a non-debtor entity, LEG Q is not one of the enumerated parties that qualifies as a party in interest under Section 1109.

Whether an entity may otherwise qualify as a party in interest is determined on a case-by-case basis, taking into consideration "whether the prospective party has a sufficient stake in the proceedings so as to require representation."[18] The term "party in interest," however, does not mean "'anyone who might be affected by the bankruptcy proceedings;' rather, a party in interest is one who has a '*legally protected interest* that could be affected by a bankruptcy proceeding.'"[19] Thus, an entity that may simply "suffer collateral damage" does not qualify as a party in interest[20] as its interests are "too remote to entitle the entity to intervene in a bankruptcy case."[21]

Given that LEG Q is merely a minority shareholder of Eco-Bat, a non-debtor entity in which EB Holdings is the majority shareholder, LEG Q has no "legally protected interest" that could be affected by the Involuntary Proceedings. By analogy, courts have consistently held that shareholders of the debtor's parent corporation are not parties in interest because they do not hold a pecuniary interest that will be directly affected by the outcome of the bankruptcy case.[22]

---

[18] In re Tower Park Properties, LLC, 803 F.3d at 457 (citing In re Thorpe Insulation Co., 677 F.3d at 884) (quoting In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985))).

[19] Id. (emphasis in original) (citing In re Thorpe Insulation Co., 677 F.3d at 884) (quoting In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992) (emphasis added) and In re Global Indus. Techs., 6465 F.3d 210, 210 (3d Cir. 2011)).

[20] Id. (citing In re C.P. Hall Co., 750 F.3d 659, 661 (7th Cir. 2014)).

[21] Id. (quoting In re C.P. Hall Co., 759 F.3d at 661 and citing 7 COLLIER ON BANKRUPTCY ¶ 1109.01[1] ("The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity ... to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest.")).

[22] See In re Royal Props. and Invs., Inc., 68 B.R. 245, 246 (Bankr. S.D. Fla. 1986) ("[A] stockholder of a parent corporation is not a party in interest entitled to intervene in the reorganization proceedings of its subsidiary.") (citing O.P.M. Leasing Servs., Inc., 21 B.R. 983, 986 (S.D.N.Y. 1981)); see also In re Renegade Holdings, Inc., 2014 WL 5304640 *1 (Bankr. M.D.N.C. Oct. 15, 2014) (determining that the member of the parent company that wholly-owned the debtor did not qualify as a party in interest under Section 1109 because he did not hold a pecuniary interest that would be directly affected by the outcome of the bankruptcy cases) (citing In re O.P.M. Leasing Servs., Inc., 21 B.R. 983, 986 (S.D.N.Y. 1981) ("A stockholder of the parent is not a party in interest [under 11 U.S.C. § 1109(b) ] entitled to intervene in the reorganization proceeding of one of its subsidiaries"); In re Century Glove, Inc., 1993 WL 239489, at *8 (D. Del. Feb. 10, 1993) (same); In re Royal Props. and Invs., Inc., 68 B.R. 245, 246 (Bankr. S.D. Fla. 1986) (same); see also Hofheimer v. Gold (In re South State St. Bldg. Corp.), 140 F.2d 363, 366–67 (6th Cir. 1943), cert. denied, 322 U.S. 761 (1944) (finding that stockholder of a parent corporation, who was not a stockholder or creditor

As LEG Q makes clear in its Limited Statement, its dispute is not with EB Holdings; rather, LEG Q's dispute is with "[Mr]. Meyers and other current and former directors of Eco-Bat;" LEG Q intends to resolve that dispute through a derivative action filed in the English High Court.[23] However, putative derivative claims in an unfiled litigation against officers and directors of a non-debtor subsidiary create no cognizable interest in these contested Involuntary Proceedings against EB Holdings.

In *Refco*, a case relied upon by the Ninth Circuit, the Second Circuit considered whether a creditor's investors were parties in interest entitled to object to a settlement between that creditor and a debtor; allegedly the settlement was the result of collusion, fraud, and other wrongful conduct by the creditor's officers and directors, and would cost the investors tens of millions of dollars.[24] Despite any pecuniary impact the settlement may have on the investors, the Second Circuit concluded that the investors were not parties in interest under Section 1109 because they did not hold claims against the debtor that were independent of the creditor.[25] The court further held that the internal dispute between the creditor and that creditor's investors should be addressed in another forum.[26] Similarly, even if LEG Q could articulate an indirect pecuniary interest in these proceedings, LEG Q does not have a legally protectable interest in the Involuntary Proceedings and therefore, is not a party in interest.

. . .

. . .

. . .

. . .

---

of the debtor subsidiary, was not a "party in interest" under the Bankruptcy Act and thus was not entitled to heard in a reorganization proceeding); In re Pennsylvania Cent. Transp. Co., 328 F.Supp. 1273, 1275 (E.D. Pa. 1971), aff'd, 455 F.2d 976 (3d Cir. 1972) (same)).

[23]   See Limited Statement, ¶ 7.

[24]   See In re Tower Park Properties, LLC, 803 F.3d at 459 (citing In re Refco Inc., 505 F.3d 109, 118 (2d Cir. 2007)).

[25]   In re Refco Inc., 505 F.3d at 117-118.

[26]   Id.

Garman Turner Gordon
650 White Dr., Suite 100
Las Vegas, Nevada 89119
(725) 777-3000

### D. LEG Q Lacks Constitutional and Prudential Standing to be Heard in the Involuntary Proceedings.

The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.[27] The inquiry into standing "involves both constitutional limits on federal-court jurisdiction and prudential limitations on its exercise."[28]

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."[29] The "irreducible constitutional minimum of standing" requires a showing of three elements: (1) the plaintiff must have suffered an "injury in fact—an invasion of a legally protectable interest" that is concrete and particularized and actual and imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of that is traceable to the defendant and not the result of independent action of a third party; and (3) it must be likely, not speculative, that the injury will be redressed by a favorable decision.[30]

LEG Q cannot establish any of the three constitutional standing requirements. First, as Section 303(b) makes clear, LEG Q is not and cannot be a petitioning creditor. Thus, LEG Q is "not entitled to have [this] court decide the merits" of the Involuntary Petition.[31] This ends the standing inquiry. However, even if it did not, LEG Q cannot establish the requisite "injury in fact" to appear and seek relief in the Involuntary Proceedings. Even if LEG Q could articulate a cognizable interest in the outcome of the Involuntary Proceedings, such interest is insufficient to confer standing.[32]

Second, as LEG Q admits, its unfiled derivative claims are against the officers and directors of Eco-Bat, not EB Holdings. Thus, the requisite "causal connection" would not exist, even if LEG Q could establish that it has an injury somehow redressable through the Involuntary

---

[27] Warth, 422 U.S. at 498.

[28] Id. (citing Barrows v. Jackson, 346 U.S. 249, 255-256 (1953)).

[29] Id.

[30] Lujan v. Defenders of Wildlife, et al., 504 U.S. 555, 560-561 (1992) (collecting cases).

[31] Warth, 422 U.S. at 498.

[32] See Lujan, 504 U.S. at 562-563.

Proceedings (which it cannot).

Third, consistent with the fact that LEG Q cannot file the Involuntary Petition or the MSJ, LEG Q's derivative claims against a non-debtor will not be resolved by the entry or denial of an order for relief on the Involuntary Petition. Therefore, LEG Q cannot establish the third required element for constitutional standing.

Apart from this minimum constitutional mandate, the prudential standing rule "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."[33] Here, there can be no dispute that LEG Q lacks standing to file the Involuntary Petition or the MSJ. As such, prudential limitations on standing preclude LEG Q from asserting the rights or legal interests of the Petitioning Creditors in order to obtain relief for itself.

### III.
### CONCLUSION

As LEG Q lacks statutory, constitutional, and prudential standing to seek relief in the Involuntary Proceedings, EB Holdings respectfully requests that the Court strike the Limited Statement, and grant such other and further relief as the Court deems just and appropriate.

Dated this 18th day of July, 2017.

GARMAN TURNER GORDON LLP

/s/ *Talitha Gray Kozlowski*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
GABRIELLE A. HAMM, ESQ.
650 White Drive, Suite 100
Las Vegas, Nevada 89119
*Attorneys for Alleged Debtor,*
*EB Holdings II, Inc.*

4815-9776-3915, v. 5

---

[33] Warth, 422 U.S. at 509.