GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
Email: ghamm@gtg.legal
650 White Drive, Suite 100
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Attorneys for Alleged Debtor, EB Holdings II, Inc.*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>EB HOLDINGS II, INC., a Nevada corporation<br><br>Alleged Debtor. | Case No.: BK-S-17-12642-MKN<br><br>Chapter 11 (Involuntary)<br><br>Date: August 17, 2017<br>Time: 9:30 a.m. |

**REPLY IN SUPPORT OF MOTION TO STRIKE LIMITED STATEMENT OF LEG Q LLC IN SUPPORT OF INVOLUNTARY CHAPTER 11 PETITION UNDER SECTION 303 OF THE BANKRUPTCY CODE**

EB Holdings II, Inc. ("EB Holdings"), the alleged debtor in the above-captioned case, submits its reply to the objection [ECF No. 173] (the "Objection") filed by LEG Q LLC ("LEG Q") to the *Motion to Strike Limited Statement of LEG Q LLC in Support of Involuntary Chapter 11 Petition Under Section 303 of the Bankruptcy Code* (the "Motion to Strike").[1]

## I. INTRODUCTION

After LEG Q's lack of standing was revealed in the Motion to Strike, LEG Q attempted to acquire standing by purchasing a beneficial interest in the PIK Loan.[2] However, bankruptcy is not

---

[1] All capitalized, undefined terms shall have the meanings ascribed to them in the Motion to Strike.

[2] *See* Objection, p. 2, ll. 8-10. However, the Transfer Certificate and related transfer documents disclosed by the non-GLAS Petitioning Creditors are conspicuously missing from the Objection. *See* Objection, Ex. A; *see also* ECF No. 6, pp. 136-181; ECF Doc. 7, pp. 5-75; ECF No. 10, pp. 5-35; ECF No. 12, pp. 5-47; ECF No. 15, pp. 5-25; ECF No. 19, pp. 6-22; and ECF No. 22, pp. 6-21 (attaching the Transfer Certificates executed by the non-GLAS Petitioning Creditors).

a pay-to-play sport; LEG Q cannot simply claim it acquired a beneficial interest in the PIK Loan post-petition and gain standing to request entry of an order for relief in the Involuntary Proceedings.

## II. ARGUMENTS AND AUTHORITIES

First, even if LEG Q did acquire an interest in the PIK Notes, LEG Q is precluded from becoming a "petitioner." Bankruptcy Rule 1003 unambiguously provides that "[a]n entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 ***shall*** not be a qualified ***petitioner***." Fed. R. Bankr. P. 1003 (emphasis added).[3] Bankruptcy Rule 1003's use of "petitioner" is important as "petitioner" is more expansive than "petitioning creditor."[4] Citing Section 303(i)'s use of "petitioner" instead of "petitioning creditor," courts have awarded damages against persons aiding petitioning creditors in their prosecution of an involuntary petition.[5]

Immediately after the Motion to Strike was filed, LEG Q filed its opposition to the requested order shortening time advising that it was in the process of acquiring PIK Notes for its own account so that it could appear and advocate for entry of an order for relief on the Involuntary Petition.[6] Therefore, based on LEG Q's own admission, Bankruptcy Rule 1003 bars LEG Q from petitioning this Court for entry of an order for relief on the Involuntary Petition.

Second, LEG Q is correct that in the context of an ongoing reorganization proceeding (such as during plan confirmation), creditor participation is encouraged.[7] However, here, no reorganization is in process. Rather, the Petitioning Creditors and EB Holdings stand at the threshold of bankruptcy and whether EB Holdings will be thrust into bankruptcy is the only issue presently

---

[3]   See also In re Pacific Rollforming, LLC, 415 B.R. 750, 752 (Bankr. N.D. Ca. 2009) (determining that the assignee of a claim was disqualified as a petitioning creditor where the assignee had acquired the claim for the purpose of commencing the involuntary petition).

[4]   See Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg), 471 B.R. 307, 312 (Bankr. S.D. Fla. 2012) (citing In re Oakley Custom Homes, Inc., 168 B.R. 232 (Bankr. D. Colo. 1994)).

[5]   See id. (noting that courts have applied Section 303(i) to find liability and to award damages against parties that were not the petitioning creditors); In re Oakley Custom Homes, Inc., 168 B.R. 232 (Bankr. D. Co. 1994) (awarding Section 303(i) damages against not only the petitioning creditors, but also their agent).

[6]   See ECF No. 135 ¶ 3.

[7]   See Objection ¶ 5 (citing In re Global Indus. Techs., 645 F.3d 201, 211 (3d Cir. 2011) (discussing the party-in-interest standard in the context of whether the debtor's insurers had a legally protected interest that could be affected by the debtor's plan)).

before the Court. In this context, Section 303 and Bankruptcy Rule 3001 are restrictive as to who may seek an order for relief on an involuntary petition, and LEG Q does not qualify.

LEG Q does not cite to a single case where a non-petitioning creditor was permitted to appear and advocate for entry of an order for relief in an involuntary proceeding. Instead, LEG Q cites to a joinder filed by the Ad Hoc Committee of First Lien Bank Lenders in the *Caesars* bankruptcy cases (the "Joinder"), wherein the committee joined the Petitioning Creditors' motion seeking to establish Delaware instead of Illinois as the venue for the *Caesars* bankruptcy cases.[8] However, as the title of the Joinder reveals, the *Caesars* entities commenced voluntary Chapter 11 cases in Illinois three days after the involuntary petition was filed in Delaware, thereby requiring a determination as to which court would hear the voluntary proceedings.[9] The committee's joinder was filed on January 20, 2015, ***five days after*** the *Caesars* voluntary cases were commenced.[10] The fact that a group of creditors was permitted to be heard with regard to a venue dispute has no bearing on whether a party barred from being a petitioning creditor may seek entry of an order for relief in a contested involuntary proceeding.

LEG Q also cites to a statement filed by the Office of the Commissioner of Baseball in support of a non-debtor limited partner's motion to dismiss the involuntary petition in *Houston Regional Sports Network*.[11] However, in that case, the court held that the non-debtor limited partner lacked standing to contest the involuntary petition.[12] The fact that a non-debtor may not contest an involuntary petition only underscores that a non-petitioning creditor cannot seek entry of an order for relief on an involuntary petition.

---

[8] See Objection, n. 5.

[9] See *In re Caesars Entm't Op. Co., Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. Jan. 15, 2015) [ECF No. 1]; Fed.R.Bankr.P. 1014(b) (providing that where voluntary and involuntary petitions are proceeding concurrently against the same debtor, the court where the first petition was filed may determine where the case will proceed).

[10] See *id.*; see also Joinder in the Relief Requested in the Motion of the Petitioning Creditors for an Order (I) Establishing Venue for the Chapter 11 Cases of Caesars Entertainment Operating Company, Inc. and Its Debtor Affiliates in the District of Delaware and (II) Granting Certain Related Relief Filed by Ad Hoc Committee of First Lien Bank Lenders, *In re Caesars Entm't Op. Co.*, Case No. 15-10047 (Bankr. D. Del. Jan. 21, 2015) [ECF No. 122].

[11] See Objection, n.5.

[12] See *In re Houston Regional Sports Network, L.P.*, 505 B.R. 468, 476 (Bankr. S.D. Tex. 2014) (citing *In re Global Ship Systems, LLC*, 391 B.R. 193, 201 (Bankr. S.D. Ga. 2007) and *In re QDN, LLC*, 363 F. App'x 873, 876 (3d Cir. 2010)).

Third, LEG Q has overstated the breadth of Section 1109. Section 1109 does not allow any creditor to appear on any matter in a bankruptcy case irrespective of whether the creditor has a stake in the issue.[13] Rather, Section 1109 means that "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an in rem proceeding—that everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims."[14] That LEG Q may, if it has properly acquired an interest in the PIK Loan, have a sufficient stake in certain matters that will be presented to the Court *if* the Involuntary Petition is granted, is irrelevant to the current matter because LEG Q is not a petitioning creditor. As LEG Q is not and cannot be a petitioning creditor, LEG Q does not have the requisite stake to grant it standing with regard to the contested Involuntary Petition.[15]

Similarly, LEG Q's invitation to ignore its burden of establishing both Article III standing and prudential standing[16] are directly contrary to Ninth Circuit precedent providing that "[t]o have standing in bankruptcy court, [LEG Q] must meet three requirements: (1) they must meet statutory 'party in interest; requirements under § 1109(b) of the bankruptcy code; (2) they must satisfy Article III constitutional requirements; and (3) they must meet federal court prudential standing requirements."[17] LEG Q's contention that it is injured by its alleged post-petition acquisition of PIK Notes is equally unavailing as LEG Q is prohibited from being a petitioning creditor and LEG Q's alleged injury resulting from its alleged post-petition acquisition of the PIK Notes is self-inflicted.

Fourth, although LEG Q purports to establish standing based on "a copy of [a] . . .

---

[13] See In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992) (holding that because Section 365(b)(4) conferred no legally protected interest on the objecting creditor in the lease between the debtor and a third-party, Section 1109(b) did not confer standing on the creditor to object); see also In re Thorpe Insulation Co., 677 F.3d 869, 884 (9th Cir. 2012) (affirmatively citing the 1109 standard set forth in James Wilson Assoc.).

[14] Id. (citing COLLIER ON BANKRUPTCY ¶ 1109.02, at pp. 1109–16 to 1109–32 (Lawrence P. King ed., 15th ed. 1991); United States v. Tit's Cocktail Lounge, 873 F.2d 141, 143 (7th Cir. 1989) (*per curiam*)).

[15] See id. (holding that because Section 365(b)(4) conferred no legally protected interest on the objecting creditor in the lease between the debtor and a third-party, Section 1109(b) did not confer standing on the creditor to object).

[16] See Objection ¶ 8.

[17] In re Thorpe Insulation Co., 677 F.3d at 884.

confirmation evidencing LEG Q's acquisition of an interest in the PIK Loan,"[18] the PIK Loan Agreement unambiguously provides that such an acquisition can only be effected pursuant to a valid Transfer Certificate—which LEG Q has not furnished. In particular, section 22.3 of the PIK Loan Agreement ("Procedure for assignments by Lenders") states that an assignment of an interest in the Loan is effected if, and only if: "(i) the Existing Lender and the New Lender execute and deliver to the Administrative Agent a duly completed Transfer Certificate; and (ii) the Administrative Agent executes it."[19] Upon information and belief, LEG Q cannot furnish a valid Transfer Certificate because it is not an eligible assignee under the PIK Loan's terms. EB Holdings reserves the right to litigate, in an appropriate forum at an appropriate time, LEG Q's eligibility as an assignee. For purposes of this Motion, it is sufficient to note that LEG Q has failed to provide basic, contractually required documentation evidencing its purported purchase.

In conclusion, as LEG Q has not cured its lack of statutory, constitutional, and prudential standing to seek relief in the Involuntary Proceedings, EB Holdings respectfully requests that the Motion to Strike be granted.

Dated this 14th day of August, 2017.

GARMAN TURNER GORDON LLP

GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
GABRIELLE A. HAMM, ESQ.
650 White Drive, Suite 100
Las Vegas, Nevada 89119
*Attorneys for Alleged Debtor,
EB Holdings II, Inc.*

---

[18] See Objection ¶ 2.

[19] See PIK Loan Agreement § 22.3.